UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CALEB GIDDINGS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MEDIA LODGE, INC., IA TECH, LLC, ADAMS KEEGAN, INC., ADAMS KEEGAN-GA, LLC, and JEFF SIEGEL,<br><br>　　　　　Defendants. | 4:17-CV-04068-RAL<br><br><br>OPINION AND ORDER DENYING MOTION TO DISMISS AND STAYING CASE |

Plaintiff Caleb Giddings, a Senior Airman in the United States Air Force Reserves, accepted a job as the director of sales for Media Lodge, Inc. (Media Lodge) in the spring of 2015. Shortly thereafter, Giddings left to serve active duty for five-plus months with the Air Force. After returning from active duty, Giddings allegedly was demoted and then terminated from Media Lodge without cause. Giddings sued Media Lodge, Media Lodge's Chief Executive Officer Jeff Siegel, Media Lodge's majority owner IA Tech, LLC (IA Tech), Adams Keegan, Inc., and Adams Keegan-GA, LLC alleging that they violated the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA). Doc. 41. Media Lodge, Siegel, and IA Tech (collectively "Media Lodge Defendants") filed a motion arguing that the Federal Arbitration Act and the arbitration clause in Giddings's employment agreement required this Court to stay or dismiss Giddings's case and compel arbitration. Doc. 18. Adams Keegan, Inc. and Adams Keegan-GA, LLC (collectively "Adams Keegan" or "Adams Keegan

1

Defendants") then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Giddings failed to state a claim upon which relief could be granted as against the Adams Keegan Defendants. Doc. 45. This Court granted the Media Lodge Defendants' motion to compel arbitration under the arbitration clause, but stayed the case rather than dismissing it. Doc. 65. For the reasons explained below, this Court now denies the Adams Keegan Defendants' motion to dismiss and stays the claims against them.

I.     **Facts Relevant to Motion to Dismiss**

Media Lodge is an electronic media marketing company whose content targets outdoor enthusiasts interested in hunting, shooting, and fishing. Doc. 41 at ¶ 3. At all times relevant to the amended complaint, Media Lodge maintained a place of business in Sioux Falls, South Dakota. Doc. 41 at ¶ 4. Adams Keegan, Inc., a Tennessee corporation, is a national human resources and professional employer organization (PEO) that provides businesses with human resources management services, including hiring and retention services. Doc. 41 at ¶ 8. Adams Keegan-GA is a Georgia company owned and operated by Adams Keegan, Inc. Doc. 41 at ¶ 10. It provides the same services as Adams Keegan, Inc. to clients in the Atlanta, Georgia area. Doc. 41 at ¶ 10. According to Giddings, Media Lodge and Adams Keegan both qualify as his employers under USERRA. Doc. 41 at ¶¶ 8–9, 13. Giddings alleges that "all Media Lodge employees were employed through Adams Keegan, including those working at its Sioux Falls, South Dakota location;" that "Adams Keegan contracted to provide employees through a lease agreement to Media Lodge, including but not limited to, providing payroll and human resources services;" and that "Adams Keegan retains the authority to hire and fire employees, dictate work rules including the employment handbook policies and procedures and to set the conditions of employment for employees who work at Media Lodge." Doc. 41 at ¶¶ 8–9.

In early April 2015, Giddings signed an employment agreement with Media Lodge to work as a director of sales. Doc. 21-1; Doc. 41 at ¶ 17. Among other things, Giddings's responsibilities as director of sales included selling advertising for Media Lodge's network of websites. Doc. 41 at ¶ 18. The employment agreement, which stated that it was between "Media Lodge" and "Caleb Giddings," set forth Giddings's salary and benefits, Media Lodge's non-compete and confidentiality policies, and the circumstances under which Media Lodge could terminate Giddings's employment. Doc. 21-1. The employment agreement did not mention Adams Keegan. Doc. 21-1.

Giddings went on mandatory active duty with the United States Air Force from late April 2015 until September 30, 2015. Doc. 41 at ¶ 21. Giddings alleges that when he returned to work upon completing his service, he was assigned sales accounts with a poor likelihood of yielding commissions rather than the high-performing sales accounts he had before going on military leave, Doc. 41 at ¶ 37, told that he would either have to accept a demotion to a lesser-paying contract position or be "transitioned" out of the company, Doc. 41 at ¶ 41, and eventually was terminated, Doc. 41 at ¶ 44. Although Giddings's allegations describing these actions focus on Media Lodge and Siegel, he alleges that "Defendants" (a term that encompasses the Adams Keegan Defendants, Media Lodge, IA Tech, and Siegel), "were involved in the decisions to take" the actions. Doc. 41 at ¶ 45. Giddings asserts that Defendants violated USERRA by failing to properly reemploy him, demoting him without just cause, and terminating him without just cause. Doc. 41 at ¶¶ 49–75. This Court held a hearing on the motions in this case in late 2017.

II.     **Standard of Review and Requests for Judicial Notice**

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

When determining whether to grant a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (internal marks omitted) (quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)). Both parties

4

requested in briefing that this Court take judicial notice of matters outside Giddings's amended complaint.

Giddings asks this Court to take judicial notice of his employee handbook, an order from a Georgia state court in a case Media Lodge brought against GunUp, Inc.,[1] and portions of the Rule 30(b)(6) deposition given by Susan Lokey, Media Lodge's Chief Financial Officer, in the Georgia case. According to Giddings, these documents are evidence that Media Lodge and Adams Keegan both qualify as his employers under USERRA. The employee handbook identifies "GunBroker.Com"[2] as Giddings's employer, Doc. 48-1 at 6, but also includes a page describing the "co-employment" relationship between GunBroker.Com and Adams Keegan, Inc., Doc. 48-1 at 7.[3] Lokey testified in her Rule 30(b)(6) deposition that Adams Keegan was her employer, that Media Lodge has no employees, and that Adams Keegan leased her and all of

---

[1] GunUp, Inc. was Giddings's prior employer. Giddings accepted his job with Media Lodge when GunUp, Inc. merged with Media Lodge in the spring of 2015.
[2] According to Giddings's amended complaint, a press release from Media Lodge states that IA Tech is the "parent company of Gunbroker.com." Doc. 41 at ¶ 12.
[3] The page describing the "co-employment" relationship between GunBroker.com and Adams Keegan, Inc. states that "GunBroker.com is responsible for providing you with supervision and direction in your daily work activities. Whenever there are questions about the goods or services that your company provides, you should direct them to your GunBroker.com supervisor." Doc. 48-1 at 7. As to Adams Keegan, Inc., the handbook states:
> Adams Keegan prepares your payroll, reports the payroll activity to the appropriate state and federal agencies, provides human resources services, and it administers your benefits and workers' compensation plan. Adams Keegan will be your source for answers to questions or concerns about Benefits, Payroll, Taxes, Garnishments or Involuntary Deductions, Workers' Compensation, and work-related issues as appropriate. Adams Keegan is your "Payroll and Human Resources Department." On the other hand, as stated above, you will have regular contact with GunBroker.com during your regular work routine. GunBroker.com will provide you with direction and supervision and maintain control of your daily activities at your worksite.

Doc. 48 at 7–8.

Media Lodge's employees to Media Lodge.[4] Doc. 49-1 at 3–6. The order Giddings seeks to introduce concerned whether the Georgia state court had personal jurisdiction over GunUp, Inc. Doc. 25-6. In concluding that personal jurisdiction was lacking, the Georgia state court relied on Lokey's deposition to find that Media Lodge had no employees itself but rather leased its employees from Adams Keegan. Doc. 25-6 at 3.

This Court deems it improper to take judicial notice of the employee handbook, the Georgia state court order, or parts of Lokey's deposition when ruling on the motion to dismiss. Although Giddings argues that judicial notice of the employee handbook is appropriate because he referenced the handbook in paragraph nine of his amended complaint, Doc. 47 at 4 n.6, 10, "[a] mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." Williams v. Time Warner Inc., 440 F. App'x 7, 9 (2d Cir. 2011) (unpublished). Giddings's reference to the employee handbook in paragraph nine of his amended complaint states that upon information and belief, "Adams Keegan retains the authority to hire and fire employees, dictate work rules including the employment handbook policies and procedures and to set the conditions of employment for employees who work at Media Lodge." Doc. 41 at ¶ 9. This passing reference is not sufficient to incorporate the employee handbook into Giddings's amended complaint.[5] Williams, 440 F. App'x at 9. Nor is the employee handbook "embraced by the pleadings" as Giddings appears to

---

[4]Although the transcript of Lokey's deposition is at least 107 pages long, this Court only has access to the six pages of the transcript Giddings filed. It is thus unknown whether Lokey ever changed or clarified her testimony about Adams Keegan.

[5]Paragraph seven of Giddings's amended complaint states that upon information and belief, "IA Tech retains the authority to hire and fire employees, dictate work rules including the employment handbook policies and procedures, and to set the conditions of employment for employees who work at Media Lodge." Doc. 41 at ¶ 7. Giddings does not cite to paragraph 7 in support of his argument that the employment handbook is incorporated into his amended complaint. Even if he had, two passing references to the employment handbook does not make the employment handbook part of his amended complaint. See Williams, 440 F. App'x at 9.

suggest in his brief. Doc. 47 at 10. After all, Giddings's amended complaint does not discuss the contents of the employee handbook, and his USERRA claims are in no way based on the handbook's terms. See Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (explaining that documents embraced by the pleadings "include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading'" (quoting Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003))). Giddings's argument concerning the Georgia order and excerpts of Lokey's deposition fares no better. He contends that judicial notice of these documents is appropriate because they are "public filings." Doc. 47 at 2–3, 10. Rule 201 of the Federal Rules of Evidence allows courts to take judicial notice of "adjudicative facts" appearing in public documents, but only if those facts are "not subject to reasonable dispute."[6] Fed. R. Evid. 201. Under this standard, courts can take judicial notice of the existence of a public document, but cannot consider the statements or findings contained therein for the truth of the matter asserted. Insulate SB, Inc. v. Advanced Finishing Sys., 797 F.3d 538, 543 n.4 (8th Cir. 2015) (declining, at the motion to dismiss stage, to consider a summary judgment order and a deposition transcript as evidence that the defendant engaged in wrongdoing); Kushner, 317 F.3d at 829–30 (declining to consider government sentencing memorandum for the truth of the matters asserted therein when a considering motion to dismiss). Lokey's testimony and the Georgia state court findings based on

---

[6]The "facts" Giddings asks this Court to notice—Lokey's testimony that Media Lodge leased all of its employees from Adams Keegan and the Georgia state court's findings based on this testimony—constitute "adjudicative facts" under Rule 201. See United States v. Gould, 536 F.2d 216, 219 (8th Cir. 1976) (defining adjudicative facts); see also Insulate SB, Inc. v. Advanced Finishing Sys., 797 F.3d 538, 543 n.4 (8th Cir. 2015) (applying Rule 201 to a request that the court take judicial notice of a summary judgment order and a deposition transcript that the plaintiff offered to support the plausibility of its claims); Kushner, 317 F.3d at 829–30 (applying Rule 201 to a government sentencing memorandum that the plaintiff was trying to use to show that the defendant had engaged in a company-wide scheme to defraud Medicare).

7

this testimony are subject to reasonable dispute; there is evidence that Media Lodge had its own employees, including Giddings himself, and that Adams Keegan was merely Media Lodge's payroll processor and PEO. And while Giddings asserts that he is simply asking this Court to take judicial notice of the existence of Lokey's testimony and the Georgia state court order, these documents will benefit Giddings only if this Court considers the contents of the documents for the truth of the matters asserted. Indeed, the arguments Giddings makes in his brief show that taking Lokey's testimony and the court order as true is exactly what Giddings wants this Court to do. See Doc. 47 at 1–2 (asserting that the documents Giddings asks this court to take judicial notice of "plainly show[] a dispute of material fact regarding the Adams Keegan Defendants' status as a joint or co-employer with Media Lodge and IA Tech as it relates to Plaintiff's claims"); Doc. 47 at 7 n.7 ("Given the presumed truth of Plaintiff's factual allegations regarding the co-employer/joint employer relationship with Media Lodge and IA Tech, and the additional evidence presented by the Handbook, the [Georgia state court order], and [Lokey's] testimony, Plaintiff has adequately pled joint employer liability against the Adams Keegan Defendants.").

Adams Keegan meanwhile asks this Court to take judicial notice of certain "facts" contained in Media Lodge's motion to compel arbitration, Media Lodge's brief and Jeff Siegel's declaration in support of this motion, Giddings's employment agreement, and the documents Giddings submitted when opposing Media Lodge's motion, including Giddings's own declaration. Doc. 52 at 22. Some of the allegations or statements in these documents support that Media Lodge was Giddings's sole employer. This Court will consider Giddings's employment agreement because it is embraced by the pleadings; Giddings's amended complaint concerns his employment relationship and lists the compensation he was promised under the employment agreement, Doc. 41 at ¶ 18, his claim that all defendants demoted him relies on the

alleged reduction of this promised compensation, Doc. 41 at ¶¶ 41–42, 61, and the parties do not question the authenticity of the employment agreement. Ashanti, 666 F.3d at 1151 (explaining that documents embraced by the pleadings "include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading'" (quoting Kushner, 317 F.3d at 831)). Adams Keegan argues that this Court can consider or take judicial notice of the other documents because the documents are "items appearing in the record of the case." Dittmer Props., 708 F.3d at 1021 (quoting Miller, 688 F.3d at 931 n.3). But a court cannot consider or take judicial notice of statements in a document simply because it has been filed in the case. 21B Kenneth W. Graham, Jr., Federal Practice and Procedure Evid. § 5106.4 (2d ed.) ("It seems clear that a court cannot notice pleadings or testimony as true simply because these statements are filed with the court."); see also Stagemeyer v. Cty. of Dawson, 192 F. Supp. 2d 998, 1002 n.2 (D. Neb. 2002) (declining to consider affidavit filed by other defendants in a separate motion to dismiss). The other documents Adams Keegan seeks to have judicially noticed are offered to "prove the truth of the matters within them and inferences to be drawn from them—matters which [Giddings] disputes." Kushner, 317 F.3d at 832. This Court deems it improper to take judicial notice of the assertions in these documents when considering a motion to dismiss.

### III. Analysis

Congress enacted USERRA to counteract employment discrimination based on military service. Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 551 (8th Cir. 2005). To that end, USERRA guarantees returning service members a right of reemployment to either the position they would have been in had they not left for military service or a "position of like seniority, status and pay, the duties of which the person is qualified to perform," 38 U.S.C. §

4313(a)(2)(A); 38 U.S.C. § 4312; prohibits discrimination as to any benefit of employment after a service member is reemployed, 38 U.S.C. § 4311, and prevents employers from firing without cause returning service members within a certain number of days of their reemployment, 38 U.S.C. § 4316(c). Congress granted the Department of Labor (DOL) authority to promulgate rules implementing USERRA. 38 U.S.C. § 4331.

Adams Keegan argues that Giddings's claims must be dismissed because he has failed to plead sufficient facts to show that Adams Keegan qualifies as his employer under USERRA. Giddings disagrees, arguing that his amended complaint sufficiently alleges that Adams Keegan was his "joint employer" along with Media Lodge and IA Tech. Under USERRA, the term "employer" means "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including–(i) a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4)(A). The DOL has issued a regulation explaining that an employee working in one job can have more than one employer under USERRA:

> Under USERRA, an employer includes not only the person or entity that pays an employee's salary or wages, but also includes a person or entity that has control over his or her employment opportunities, including a person or entity to whom an employer has delegated the performance of employment-related responsibilities. For example, if the employee is a security guard hired by a security company and he or she is assigned to a work site, the employee may report both to the security company and to the site owner. In such an instance, both employers share responsibility for compliance with USERRA. If the security company declines to assign the employee to a job because of a uniformed service obligation (for example, National Guard duties), then the security company could be in violation of the reemployment requirements and the anti-discrimination provisions of USERRA. Similarly, if the employer at the work site causes the employee's removal from the job position because of his or her

10

> uniformed service obligations, then the work site employer could be in violation of the reemployment requirements and the anti-discrimination provisions of USERRA.

20 C.F.R. § 1002.37.

Here, Giddings alleges that "all Media Lodge employees were employed through Adams Keegan, including those working at its Sioux Falls, South Dakota location," that "Adams Keegan contracted to provide employees through a lease agreement to Media Lodge," and that "Adams Keegan retains the authority to hire and fire employees, dictate work rules including the employment handbook policies and procedures and to set the conditions of employment for employees who work at Media Lodge." Doc. 41 at ¶¶ 8–9. Giddings also alleges that "Defendants," including Adams Keegan, were "involved in the decisions" to assign him the low-performing sales accounts when he returned to Media Lodge, to terminate him without cause, and to demote him without cause. Doc. 41 at ¶ 45. Giddings's allegations that Adams Keegan was one of his employers are not overly detailed, but they go beyond the sort of conclusory allegations courts can ignore on a Rule 12(b)(6) motion.

Several courts have found allegations similar to those in Giddings's amended complaint against Adams Keegan to be sufficient at the motion to dismiss stage. In Mitchell v. HOV Servs., Inc., No. 10-cv-00226-LTB, 2010 WL 2017720 (D. Colo. May 20, 2010), for instance, the plaintiff sued two companies, HOV Services and Bay Area Credit Services, for violating USERRA. The plaintiff alleged that HOV Services was the parent company of Bay Area Credit Services, that he had been directed to report to executives of HOV Services when he returned to work, that "HOV/BACS" had notified him that his failure to accept relocation would result in termination, and that "Defendants" had violated USERRA by terminating him. Id. at *2. HOV Services moved to dismiss, arguing that Bay Area Credit Services was plaintiff's employer and

that plaintiff's claims were based on a mistaken belief that HOV Services was the parent company of Bay Area Credit Services. Id. at *1. The district court denied the motion, concluding that the plaintiff's allegations made it plausible that HOV Services had control over the plaintiff's employment opportunities and therefore qualified as his employer under USERRA. Id. at *2. Similarly, the district court in Jones v. Wolf Camera, Inc., No. 3:96-CV-2578-D, 1997 WL 22678 (N.D. Tex. Jan. 10, 1997), held that the plaintiff's complaint had sufficiently alleged that two individuals qualified as his employers under USERRA where the plaintiff asserted that the individuals had absolute authority to hire and fire employees at the company where he worked. Id. at *2. Still another example is the decision in McDaniel v. Loyola University Medical Center, 317 F.R.D. 72 (N.D. Ill. 2016), where the district court held that a doctor's proposed amendment to add a health care system as a defendant in his USERRA suit was not futile. Id. at 78. Although certain affiliation agreements in the record suggested that the health care system did not have any control over the plaintiff, the district court found that the explanation in 20 C.F.R. § 1002.37 and USERRA's broad definition of employer allowed the possibility that the health care system was one of the doctor's employers. Id. Taking the allegations in Giddings's amended complaint as true and drawing all reasonable inferences in Giddings's favor, it is plausible that Adams Keegan falls within USERRA's broad definition of employer.

Nothing in this Opinion and Order should be taken as suggesting, however, that Adams Keegan in fact was Giddings's actual employer or involved in the claimed adverse employment actions that Giddings experienced after returning to Media Lodge. Adams Keegan pointed to material outside the pleadings that, if accurate, suggests that Adams Keegan was merely an outside PEO for Media Lodge. Indeed, Media Lodge's attorney stated during the hearing that

Media Lodge did have its own employees and that Lokey's Rule 30(b)(6) testimony to the contrary was mistaken. Giddings of course has had no opportunity to conduct discovery, and this Court declines to convert the motion to dismiss into a motion for summary judgment.

The next question for this Court is whether to stay the case or whether to allow Giddings some discovery from Adams Keegan so that Adams Keegan might bring, and Giddings might have a fair chance to oppose, a motion for summary judgment that Adams Keegan is not Giddings's employer as a matter of law under USERRA. A "district court has discretion to stay 'third party litigation [that] involves common questions of fact that are within the scope of [a related party's] arbitration agreement.'" AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, 242 F.3d 777, 782 (8th Cir. 2001) (first alteration in original) (quoting Contracting Nw., Inc. v. City of Fredericksburg, 713 F.2d 382, 387 (8th Cir. 1983)); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983) (explaining that a district court may stay litigation among nonarbitrating parties pending the outcome of an arbitration "as a matter of its discretion to control its docket"). When deciding whether to stay a case pending arbitration, courts consider "(1) the risk of inconsistent rulings; (2) the extent to which the parties will be bound by the arbiters' decision; and (3) the prejudice that may result from delays." Reid v. Doe Run Res. Corp., 701 F.3d 840, 845 (8th Cir. 2012). Giddings alleges that Media Lodge and Adams Keegan were his joint employers and that both were involved in the decisions giving rise to his USERRA claims. Giddings's claims against Adams Keegan thus share common questions of fact with his claims against the Media Lodge Defendants. Given this factual overlap, there is not only a risk of duplicate discovery and inconsistent rulings, but also the potential that Giddings could be bound by the arbitrator's findings if the arbitrator were to find in favor of the Media Lodge Defendants that no USERRA violation occurred. See Schoenfeld v.

U.S. Resort Mgmt., Inc., No. 05-4368-CV-C-NKL, 2007 WL 2908622, at *3 (W.D. Mo. Oct. 4, 2007) (holding that collateral estoppel barred a plaintiff from suing a defendant on the same Title VII claims the plaintiff had already arbitrated, and lost, against a co-defendant, even though the defendant was not a party to the arbitration). Staying this case pending the arbitration will not materially prejudice either party. If anything, allowing the arbitration to play out should give Giddings a better idea of whether he has meritorious claims against Adams Keegan without either side incurring discovery costs.

**IV.  Conclusion**

For the reasons stated above, it is hereby

ORDERED that the Adams Keegan Defendants' Motion to Dismiss, Doc. 45, is denied. It is further

ORDERED that Giddings's claims against the Adams Keegan Defendants are stayed pending arbitration of Giddings's claims against the Media Lodge Defendants.

DATED this 12th day of April, 2018.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE